**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RHONDA RASCHE and DANIEL CHASTEEN, individually, and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 15 cv 7918 |
| | ) | |
| B.R. LANE, Acting Director of the Illinois Department of the Lottery; ILLINOIS DEPARTMENT OF THE LOTTERY; ILLINOIS LOTTERY CONTROL BOARD; and NORTHSTAR LOTTERY GROUP, LLC, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | Jury Trial Demanded |

# CLASS ACTION COMPLAINT

Plaintiffs RHONDA RASCHE ("Rasche") and DANIEL CHASTEEN ("Chasteen"), individually, and on behalf of all others similarly situated (collectively, "Illinois Lottery Winners"), by and through counsel at ZIMMERMAN LAW OFFICES, P.C., bring this action against B.R. LANE, Acting Director of the Illinois Department of the Lottery; the ILLINOIS DEPARTMENT OF THE LOTTERY; the ILLINOIS LOTTERY CONTROL BOARD; and NORTHSTAR LOTTERY GROUP, LLC ("Northstar") (collectively, the "Defendants"), and state as follows:

## ILLINOIS LOTTERY WINNERS CANNOT COLLECT THEIR WINNINGS

1.     Plaintiffs Rasche and Chasteen bring this action against the Defendants, in connection with the Defendants' ongoing failure to make payouts due and owing to the Illinois Lottery Winners.

2.     Illinois Lottery Winners, who won and are entitled to funds in excess of $25,000 after July 1, 2015, have been unable to obtain their winnings from Defendants.

3.     On or about August 28, 2015, almost two months after Defendants stopped making disbursements to the Illinois Lottery Winners whose winnings exceed $25,000, Steven Rossi, Communication Director of the Illinois Department of the Lottery, made the following public announcement:[1]

> Due to the ongoing budget situation in Springfield, some lottery winner payments have been delayed. All winners will be paid in full as soon as the Lottery and the Illinois Comptroller have the legislative authority to do so. Currently, winners may claim prizes under $600 at any of our 8,000 retail locations, and prizes under $25,000 may be claimed at any Lottery claims center, found at illinoislottery.com."

4.     As a result of the official policy adopted by Defendants, Illinois Lottery Winners who won in excess of $25,000 after July 1, 2015, are indefinitely barred from obtaining their winnings.

5.     Many winners have been placed in a financial limbo, with no date or deadline by which the payments to which they are entitled would be disbursed. The Illinois Lottery on its website highlights twenty-nine (29) prizes that have occurred since July 1, 2015, ranging from $50,000 to a $262 million Mega Millions jackpot split by two winners. That jackpot happens to be the second largest prize in the history of the Illinois lottery.[2]

---

[1] Gaynor Hall, *Illinois Lottery Delays Payouts of $25,000 or More*, WGNTV.COM, Aug. 28, 2015, http://wgntv.com/2015/08/28/illinois-lottery-gives-i-o-u-for-payouts-of-25000-or-more.

[2] Aaron Smith, *Illinois lottery winners are in limbo*, CNN MONEY, Aug. 31, 2015, http://money.cnn.com/2015/08/31/news/illinois-lottery/index.html?iid=surge-stack-dom.

6. The Illinois Department of the Lottery claims that it cannot pay these Lottery Winners "because state lawmakers haven't passed a budget and . . . lottery officials don't have legal authority to do payouts."[3]

7. Rich Carter, press secretary for Illinois Comptroller Leslie Munger's office, claimed that "Without a budget, we can't, by law, make any payments on an appropriated fund without a court order or consent decree or statutory continuing appropriation." [4]

8. The attempts to render contingent the distribution of the Lottery winnings upon the passage of the budget means that it is quite realistic that the winners may never receive their money, as the budget is not close to being passed and the State of Illinois is operating under a "new normal" without a budget.[5]

9. Based on the information set forth on the website of the Illinois Lottery, the following constitutes the breakdown of the amounts due and owing to the winners, the grand total of which is $288,425,000:[6]

| Date of Press Release | Prize Amount | Names of Winners |
|---|---|---|
| August 17, 2015 | $1,050,000 | John Groth |
| August 14, 2015 | $250,000 | Doris Buchanan |
| August 13, 2015 | $50,000 | Rhonda Rasche |

---

[3] *Id.*

[4] Natalie Martinez, *Suburban Family Still Waiting for Payment After Big Lottery Win Due to Budget Stalemate*, NBC CHICAGO, Aug. 29, 2015, http://www.nbcchicago.com/news/local/Lottery-Winners-Delayed-Payment-Over-Budget-Impasse-323244981.html.

[5] Kim Geiger & Monique Garcia, *Illinois' new normal: No budget, by money still flowing*, CHICAGO TRIBUNE, Aug. 10, 2015, http://www.chicagotribune.com/news/local/politics/ct-illinois-budget-new-normal-met-20150809-story.html.

[6] *Anything's Possible Press Releases*, ILLINOIS LOTTERY, http://www.illinoislottery.com/en-us/press-releases.html (last accessed September 8, 2015).

| | | |
|---|---|---|
| August 12, 2015 | $400,000 | Tatasha Trotter |
| August 7, 2015 | $850,000 | Andrew Burke |
| August 6, 2015 | $400,000 | Lance Whitfield |
| August 5, 2015 | $15,000,000 | Michelle Baymon |
| August 4, 2015 | $450,000 | Eddie Mae Mason |
| August 3, 2015 | $1,000,000 | Carlos Herrera |
| July 31, 2015 | $50,000 | David Davis |
| July 30, 2015 | $250,000 | Leon Pawlykowycz |
| July 29, 2015 | $500,000 | Jermaine Roby |
| July 28,2015 | $200,000 | Narayan Dhungel |
| July 27, 2015 | $250,000 | Danny Chasteen |
| July 2015 | $262,000,000 | John Williams and Neal Logue |
| July 24, 2015 | $1,000,000 | Paul Veselack |
| July 23, 2015 | $175,000 | John Howard |
| July 21, 2015 | $150,000 | Michael Gioppo |
| July 22, 2015 | $550,000 | Patti Schaake |
| July 17, 2015 | $50,000 | Christine Kulman |
| July 16, 2015 | $1,000,000 | Melynda Refkin |
| July 15, 2015 | $100,000 | Jaime Prazma |
| July 14, 2015 | $200,000 | Vivian Wilson |
| July 13, 2015 | $100,000 | Bill King |
| July 9, 2015 | $300,000 | Jeff Hendrix |
| July 8, 2015 | $600,000 | Glenn Gliedt and Jeffrey Darr |

| July 7, 2015 | $250,000 | Francisco Hernandez |
|---|---|---|
| July 6, 2015 | $250,000 | Charles McLaughlin |
| July 1, 2015 | $1,000,000 | Edward Casper |
| **Total:** | **$288,425,000** | |

10.     Since August 17, 2015, the website of the Illinois Lottery inexplicably ceased publishing the Press Releases relating to the Illinois Lottery Winners, who won in excess of $25,000.[7]

11.     State Representative Jack Franks (D-Marengo) cited the Illinois government for committing fraud in this instance:

> Our government is committing a fraud on the taxpayers, because we're holding ourselves out as selling a good, and we're not—we're not selling anything, Franks said. The lottery is a contract: I pay my money, and if I win, you're obligated to pay me and you have to pay me timely. It doesn't say if you have money or when you have money.[8]

12.     Notwithstanding Defendants' failure to pay out prizes in excess of $25,000, Defendants continue to sell Illinois Lottery tickets with potential winnings in excess of $25,000.

13.     Upon information and belief, notwithstanding Defendants' failure to pay out the prizes in excess of $25,000, Defendants continue to pay costs incurred in the operation and administration of the Illinois Lottery, including, without limitation, B.R. Lane's annual salary of $142,000, and the sums due to the statutory private manager Defendant Northstar under the management agreement with the Department of the Lottery.

---

[7] *Id.*

[8] Matthew Walberg, *Illinois lottery winners have to wait for payout due to budget impasse*, CHICAGO TRIBUNE, Aug. 28, 2015, http://www.chicagotribune.com/news/local/breaking/ct-lottery-payments-delayed-met-0828-20150828-story.html (last accessed September 4, 2015)

14.     Plaintiffs, individually, and on behalf of all others similarly situated, seek immediate suspension of the sale of Illinois Lottery tickets with potential winnings in excess of $25,000 until all winning tickets can be properly and promptly paid; suspension of payment for the operating expenses associated with the Illinois Lottery; and immediate payment of all of their winnings, plus the accrued statutory pre-judgment interest on at least $288,425,000 of these unpaid winnings. The Court should also order Defendants to explicitly inform individuals presently purchasing the Illinois Lottery tickets and games at the point of sale that they are not able to collect their winnings, if their winnings exceed $25,000.

### NORTHSTAR CONTINUED TO SERVE AS PRIVATE MANAGER OF THE ILLINOIS LOTTERY, DESPITE ITS FAILURE TO DELIVER

15.     Defendant Northstar is the statutory private manager of the Illinois Lottery.

16.     In December 2014, the then-Governor of Illinois, Pat Quinn, reached a settlement with Northstar to terminate it from its position as the private manager due to its alleged failures to deliver on its financial promises to the state.[9]

17.     In January 2015, the settlement was overturned by Attorney General Lisa Madigan, and Northstar continued to serve as the statutory private manager.[10]

18.     Subsequently, in his February 24, 2015, letter to Timothy J. Simonson, the Chief Executive Officer of Northstar, Jason Barclay, the General Counsel of the Office of the Governor, wrote that Northstar "consistently failed" to meet the terms of its private management agreement with the state, including the "net income targets for at least two consecutive years."

---

[9] Greg Hinz, *Rauner names new Illinois Lottery chief as fight with Northstar escalates*, CRAIN'S CHICAGO BUSINESS, Mar. 27, 2015, http://www.chicagobusiness.com/article/20150327/BLOGS02/150329805/rauner-names-new-illinois-lottery-chief-as-fight-with-northstar-escalates.

[10] *Id.*

6

"This is unacceptable and grounds for termination" under the agreement, the letter said.[11] A copy of the February 24, 2015, letter is attached hereto as Exhibit 1.

19.     The letter further stated that the Office of the Governor was "prepared to enforce the terms of the [private management agreement]," and unless an acceptable compromise can be reached, the state not only would not fulfill the terms of the Quinn settlement, but will demand that Northstar "furnish to us performance bonds or letters of credit in the aggregate amount of $100,000,000."[12]

**OBLIGATIONS TO PAY LOTTERY WINNERS
PURSUANT TO THE ILLINOIS LOTTERY LAW**

20.     The Illinois Lottery Law, set forth in 20 ILCS 1605/1, *et seq.*, provides for the Plaintiffs' and Class members right to payments for their prize winnings and for priority of such payments over the costs incurred in the operation and administration of the Lottery, including the sums due to Northstar:

> Except as provided in Sections 21.2, 21.5, 21.6, 21.7, 21.8, and 21.9, the Department shall distribute all proceeds of lottery tickets and shares sold in the following priority and manner:
>
> (1) The payment of prizes and retailer bonuses.
>
> (2) The payment of costs incurred in the operation and administration of the Lottery, including the payment of sums due to the private manager under the management agreement with the Department.
>
> (3) On the last day of each month or as soon thereafter as possible, the State Comptroller shall direct and the State Treasurer shall transfer from the State Lottery Fund to the Common School Fund an amount that is equal to the proceeds transferred in the corresponding month of fiscal year 2009, as adjusted for inflation, to the Common School Fund.

---

[11] *Id.*

[12] *Id.*

(4) On or before the last day of each fiscal year, deposit any remaining proceeds, subject to payments under items (1), (2), and (3) into the Capital Projects Fund each fiscal year.

20 ILCS 1605/9.1(o).

21.     Further, Illinois Lottery Law specifies that all net revenues from the sale of lottery tickets and other sources be placed into a specially created fund called the "State Lottery Fund":

There is created in the State Treasury a special fund to be known as the "State Lottery Fund". Such fund shall consist of all revenues received from (1) the sale of lottery tickets or shares (net of commissions, fees representing those expenses that are directly proportionate to the sale of tickets or shares at the agent location, and prizes of less than $600 which have been validly paid at the agent level), (2) application fees, and (3) all other sources including moneys credited or transferred thereto from any other fund or source pursuant to law. Interest earnings of the State Lottery Fund shall be credited to the Common School Fund.

20 ILCS 1605/20(a).

22.     According to a letter dated July 6, 2015 from B.R. Lane to the Illinois State Treasurer, as of June 30, 2015 the cash balance in the State Lottery Fund was $244.4 million.

## **PARTIES**

23.     At all relevant times, Plaintiff Rasche was an Illinois citizen.

24.     At all relevant times, Plaintiff Chasteen was an Illinois citizen.

25.     At all relevant times, Defendant B.R. Lane, an Illinois citizen, was the Acting Director of the Department of the Lottery.

26.     At all relevant times, Defendant Illinois Department of the Lottery was a governmental entity of the state of Illinois.

27.     At all relevant times, Defendant Illinois Lottery Control Board was a governmental entity of the state of Illinois.

28.     At all relevant times, Defendant Northstar, was an Illinois limited liability company, with its principal place of business located at 180 North LaSalle Street, Suite 1810, Chicago, Illinois, and

8

a.  Scott Gunn is a Member of Defendant Northstar, with an address in Providence, Rhode Island;

b.  Michael R. Chambrello is a Member of Defendant Northstar, with an address in Providence, Rhode Island;

c.  Timothy J. Simonson is a Member of Defendant Northstar, with an address in Cook County, Illinois;

d.  Jim Kennedy is a Member of Defendant Northstar, with an address in New York, New York;

e.  Marco Tasso is a Member of Defendant Northstar, with an address in Cook County, Illinois.

## LEGAL BASIS FOR INJUNCTIVE RELIEF

29.     In the instant matter, Plaintiffs and Class members are seeking injunctive relief to prevent Defendants from selling Illinois Lottery tickets and games, with potential winnings in excess of $25,000; to stop making payments to finance the operation of the Lottery; to issue payments to Plaintiffs and the Class from the State Lottery Fund; and to explicitly inform individuals presently purchasing the Illinois Lottery tickets and games at the point of sale that they are not able to collect their winnings if their winnings exceed $25,000.

30.     "The purpose of a preliminary injunction is not to conclude the merits of the controversy, but merely to preserve the status quo until a more considered decision on the merits is possible." *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 264 (7th Cir. 1981).

31.     When seeking injunctive relief under the common law, the party seeking a preliminary injunction or TRO must establish facts demonstrating the traditional equitable elements that (1) it has a protected right; (2) it will suffer irreparable harm if injunctive relief is

9

not granted; (3) its remedy at law is inadequate; and (4) there is a likelihood of success on the merits. *Houseknecht v. Zagel*, 112 Ill.App.3d 284, 291-92 (1st Dist. 1983). In either case, the party seeking relief is not required to make out its entire case that would entitle it to relief on the merits; rather, it need show only that it raises a "fair question" about the existence of its right and that the court should preserve the *status quo* until the case can be decided on the merits. *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill.2d 373, 382 (1985).

32.     In the case at hand, all of the elements for injunctive relief are met.

## CLEARLY ASCERTAINABLE RIGHT

33.     In order for injunctive relief to be obtained, a plaintiff must clearly establish a protectable property right. *Ording v. Springer*, 88 Ill.App.3d 243, 245 (1st Dist. 1980). The Plaintiffs' and Class members' right to their winnings is a clearly ascertainable property right. Furthermore, the individuals playing the Illinois Lottery have a clearly ascertainable right to receive their winnings if they win in excess of $25,000. Also, the individuals playing the Illinois Lottery are entitled to be apprised that they will not be able to obtain winnings in excess of $25,000, before making their decision to purchase Lottery games and tickets. *Eagle Marine Industries, Inc. v. Union Pacific R. Co.*, 363 Ill.App.3d 1166, 1184 (5th Dist. 2006); *Paddington Corp. v. Foremost Sales Promotions, Inc.*, 13 Ill.App.3d 170, 175 (1st Dist. 1973).

## IRREPARABLE HARM

34.     The necessity of the temporary injunction should be made apparent by appropriate allegations showing that a change in the *status quo* would cause irreparable injury. *O'Brien v. Matual*, 14 Ill.App.2d 173, 187 (2nd Dist. 1957). Plaintiffs and the Class members are subject to irreparable injury given the fact that Defendants refuse to distribute their winnings from the State Lottery Fund. Further, the individuals who are buying Illinois Lottery tickets without knowing

10

that no payouts are given for prizes in excess of $25,000 are harmed, in that they are paying for a chance to win a prize which is not offered.

## INADEQUATE REMEDY AT LAW

35.    There is no adequate remedy at law when the injury is continuing in nature. An injunction is proper in such a circumstance. *Fink v. Board of Trustees of Southern Ill. Univ.*, 71 Ill.App.2d 276, 281 (5th Dist. 1966).  In the case at hand, there is no adequate remedy at law for the Defendants' misconduct. The legal remedy is inadequate, because the wrongs complained of are continuous and ongoing. Defendants continue to refuse to provide the existing Lottery winners with the winnings. Further, at the present time, Defendants continue to sell Illinois Lottery tickets with potential winnings in excess of $25,000, even though the potential winners of prizes in excess of $25,000 will not be able to collect the money from Defendants.

## LIKELIHOOD OF SUCCESS ON THE MERITS

36.    "The party seeking a preliminary injunction or temporary restraining order is not required to make out a case which would entitle him to relief on the merits; rather, he need only show that he raises a 'fair question' about the existence of his right and that the court should preserve the status quo until the case can be decided on the merits." *Buzz Barton & Assoc., Inc. v. Giannone*, 108 Ill.2d 373, 382 (1985). Plaintiffs are likely to be successful on the merits given Defendants' failure (fraudulent, or in the alternative, otherwise) to make payments to the Plaintiffs and Class members, in spite of their obligation to do so under the Illinois Lottery Law. Thus, the "fair question" prong is met here.

## ENFORCEMENT IS FEASIBLE

37.    Enforcement is feasible, as Plaintiffs are asking the Court to suspend the sales of Illinois Lottery tickets with a potential payout of more than $25,000 until the payments will be

11

made to the winners who are entitled to sums in excess of $25,000; order Defendants to issue payments to the Plaintiffs and Class from the State Lottery Fund; to suspend payment of the Illinois Lottery's operating costs and expenses until Plaintiffs and Class members receive their winnings; and to explicitly inform individuals presently purchasing the Illinois Lottery tickets and games at the point of sale that they are not able to collect their winnings if their winnings exceed $25,000. The Court can easily ascertain whether Defendants are in compliance with its order.

## **BALANCING OF HARDSHIPS**

38.     The hardship to Defendants is slight compared to the hardship continuously experienced by winners and potential winners, including the financial burden that Plaintiffs and the Class will suffer from having their winnings frozen indefinitely, and having to apply for loans to pay their bills, as Plaintiff Chasteen has done. Furthermore, there should be no balancing of the hardships, as Defendants' conduct was knowing, intentional and willful, in that Defendants continued to sell Illinois Lottery tickets knowing that no payments would be made for prizes that exceed $25,000. The financial aspects of such an injunction would be easily tolerated by the Defendants given the presence of funds in the State Lottery Fund. Additionally, given the intentional nature involved in Defendants' decision to stop making payments to a specific set of winners, while continuing to sell lottery tickets for the potential prizes they will not pay, the balance of hardships inquiry is unnecessary. *See Nonnenmann v. Lucky Stores, Inc.,* 53 Ill.App.3d 509, 515 (3rd Dist. 1977) (noting that a court should not apply the relative hardship test where conduct by a defendant was intentional).

12

**THE COURT SHOULD DISPOSE OF THE BOND
REQUIREMENTS BEFORE ENTERING THE INJUNCTION**

39.     Federal Rule of Civil Procedure 65(c) provides:

The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed.R.Civ.P. 65(c).

40.     In this instance, there is a good cause for this Court to issue injunctive relief in the absence of a bond. Here, Defendants do not dispute that Plaintiffs and the Class are entitled to the winnings that Defendants are simply refusing to pay. Plaintiffs seek to have Defendants do what they are already obligated to do—that is, to make the payments they are obligated to make to current and potential winners from the State Lottery Fund. In the alternative, this Court should suspend the sale of the Illinois Lottery tickets and games and the operation of the Illinois Lottery until such payments can be readily made. Given the priority granted to the prize winners under the Illinois Lottery Law, it is improper to pay the secondary operational expense of the Illinois Lottery, while leaving the actual and potential winners of the lottery without payments and without redress.  *See* 20 ILCS 1605/9.1(o).

41.     Therefore, in light of the foregoing, Plaintiffs have demonstrated good cause for the Court to issue injunctive relief consistent with the request herein.

**JURISDICTION AND VENUE**

42.     This Court has jurisdiction over Plaintiffs' and Class members' constitutional and property rights claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, in that their claims arise under 42 U.S.C. § 1983, which is an Act of Congress providing for the protection of constitutional and property rights.

43. This Court has supplemental jurisdiction over Plaintiffs' and Class members' state law claims pursuant to 28 U.S.C. § 1367, as Plaintiffs' and Class members' state law claims arise out of the same case or controversy as Plaintiffs' and Class members' constitutional and property rights claims.

44. Venue is proper the Northern District of Illinois, pursuant 28 U.S.C. § 1391.

## FACTS RELEVANT TO PLAINTIFFS

45. On or about July 28, 2015, Rasche purchased two Illinois Lottery Crossword Scratch-Off tickets in Homer Glen, Illinois.

46. As a result of playing the first Illinois Lottery Crossword Scratch-Off Ticket, Rasche did not win anything.

47. As a result of playing the second Illinois Lottery Crossword Scratch-Off Ticket, ("Rasche's Winning Ticket") Rasche immediately won and was entitled to $50,000.

48. On July 30, 2015, Rasche submitted her Winning Ticket to the Illinois Lottery Claim Center located in Des Plaines, Illinois.

49. As of the date of the filing of this Class Action Complaint, Rasche received no payment in connection with Rasche's Winning Ticket.

50. On or about July 20, 2015, Chasteen purchased one Illinois Lottery Cool Cash Scratch-Off Ticket in Spring Valley, Illinois.

51. As a result of playing his Illinois Lottery Cool Cash Scratch-Off Ticket ("Chasteen's Winning Ticket"), Chasteen immediately won and was entitled to $250,000.

52. On July 21, 2015, Chasteen submitted his Winning Ticket to the Illinois Lottery Claim Center located in Rockford, Illinois.

53.     On August 24, 2015, Chasteen was told for the first time that he would not get paid because of the state budget issues set forth above.

54.     As of the date of the filing of this Class Action Complaint, Chasteen received no payment in connection with Chasteen's Winning Ticket.

## CLASS ALLEGATIONS

55.     **Class I Definition**: Plaintiffs Rasche and Chasteen bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and a Class of all others similarly situated, defined as follows:

> All winners of Illinois Lottery Games and Lottery Tickets whose claim to prizes in excess of $25,000 existed on or after July 1, 2015, and who have not been paid.

Excluded from the Class are: (1) Defendants, and Defendants' agents; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

56.     **Class II Definition**: Plaintiff Rasche brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and a Class of all others similarly situated, defined as follows:

> All individuals who bought Illinois Lottery Games and Lottery Tickets with potential prize awards in excess of $25,000 on or after July 1, 2015, and who had not been informed by Defendants that they would not be able to obtain payment of winnings in excess of $25,000.

Excluded from the Class are: (1) Defendants, and Defendants' agents; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

57.     **Numerosity**: The Classes are so numerous that joinder of all individual members in one action would be impracticable. Since August 17, 2015, the website of the Illinois Lottery stopped publishing the Press Releases identifying the Illinois Lottery Winners who won prizes in

excess of $25,000. As of August 17, 2015, there were twenty-nine (29) lottery winnings that have occurred since July 1, 2015, with prizes ranging from $50,000 to a $262 million Mega Millions jackpot. Defendants continue to sell Illinois Lottery tickets with potential winnings in excess of $25,000. Thus, the number of individuals with Winning Tickets worth in excess of $25,000 has increased. Furthermore, the number of individuals comprising Class II is very significant, likely in the thousands.

58.　　**Commonality and Predominance**: There are common questions of fact and law affecting members of the Classes, which common questions predominate over questions which may affect individual members. These include the following:

  a.　　Whether Plaintiffs and Class members are entitled to their winnings without further delay;

  b.　　Whether Plaintiffs and Class members have full and exclusive property rights in their winnings (*i.e.*, ownership);

  c.　　Whether Plaintiffs and Class members have been wrongfully deprived of their winnings;

  d.　　Whether Plaintiffs and Class members are entitled to injunctive relief to obtain their winnings;

  e.　　Whether the Defendants violated Plaintiffs' and Class members' constitutional and property rights by refusing to disburse the winnings;

  f.　　Whether Plaintiffs and Class members have a right to immediate possession of the winnings;

  g.　　Whether Defendants converted Plaintiffs' and Class members' property (*i.e.*, winnings in excess of $25,000);

  h.　　Whether Plaintiffs and Class members are entitled to interest on the withheld funds;

  i.　　Whether Defendants were unjustly enriched due to their conduct;

  j.　　Whether Defendants committed fraud;

k.      Whether Plaintiff Rasche and Class II members were and are entitled to be informed that they would not be paid if their winnings exceeded $25,000.

59.     **Typicality**: Plaintiffs' claims are typical of the claims of the Class members. All are based on the same legal theories and arise from the same unlawful conduct. Plaintiffs and the Class have been similarly or identically harmed by the same unlawful conduct of Defendants. Defendants have uniformly refused to issue any winnings to the Plaintiffs and Class, yet Defendants continue to pay the operating costs of the Lottery and sell tickets with a potential value in excess of $25,000 without informing people that they will not get paid.

60.     **Adequacy of Representation**: Plaintiffs will fairly and adequately represent the Class members. Plaintiffs have no interests that conflict with the interests of the Class members. Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation.

61.     **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Besides the predominance of questions common to all Class members, individual Class members lack resources to undertake the burden and expense of individual prosecution of these claims against Defendants. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. In contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

62.     Furthermore, Defendants have acted and refused to act on grounds that apply generally to the Classes, so that final injunctive relief and declaratory relief would apply to the Class as a whole.

## COUNT I
### (Declaratory Judgment)

63.     Plaintiffs repeat and reallege Paragraphs 1-62 with the same force and effect as though fully set forth herein.

64.     At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a)

65.     The controversy presented in this case is definite and concrete, and affects the adverse legal interests of the parties. Plaintiffs and Class members have a tangible legal interest in the claims set forth herein as they are entitled to their winnings (in their entirety) and pre-judgment interest at the rate of 5%, under 815 ILCS 205/2, on the unpaid winnings of at least $288,425,000. Defendants have an opposing tangible legal interest in the claims set forth herein, as this case will determine whether Defendants must disburse money to Plaintiffs and the Class in the form of the winnings plus interest.

66.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendants deprived, and continue to deprive, Plaintiffs and the Class members of their constitutional and property rights vis-à-vis the winnings and interest. Plaintiffs and the Class have suffered an "injury in fact" as a result of Defendants' wrongful retention of the winnings and interest that Defendants are earning on the unpaid winnings.

67. Consequently, Plaintiffs and the Class members have been, and will continue to be, caused significant harm in that they have been unlawfully deprived of their constitutional rights, and have been denied possession of their rightful property—the winnings plus interest—by Defendants. Plaintiffs and the Class members will continue to suffer financial hardship, in addition to the deprivation of their constitutional due process rights, if the Court were to deny their request for declaratory relief.

68. If the Court were to deny Plaintiffs and Class members' request for declaratory relief, this controversy will continue to exist, as Defendants refuse to fulfill their obligations under the Illinois Lottery Law.

69. Since Plaintiffs and Class members indisputably satisfied all requirements set forth in Illinois Lottery Law, and the Illinois Lottery Law did not allow for any exceptions or discretion in disbursement of properly filed claims, once winning tickets have been properly submitted, there are no disputed facts that the Court would have to resolve in granting Plaintiffs' and Class members' request for declaratory relief.

70. Based on the foregoing facts, the Court should declare the rights and other legal remedies of Plaintiffs and Class members vis-à-vis the winnings and interest. Namely, Plaintiffs and the Class seek a declaration that: (1) Plaintiffs and Class members were, and continue to be, entitled to the winnings plus interest without further delay, (2) Plaintiffs and Class members had, and continue to have, full and exclusive property rights in the winnings plus interest (*i.e.*, ownership), (3) Defendants have wrongfully deprived, and continue to wrongfully deprive, Plaintiffs and Class members of the winnings and interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of Class I, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying Class I defined herein;

B.  Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiffs and the Class and against Defendants;

D.  Issuing an order declaring the rights and other legal remedies of Plaintiffs and Class members in their winnings plus pre-judgment interest at the rate of 5%, under 815 ILCS 205/2, on the unpaid winnings of at least $288,425,000;

E.  Awarding Plaintiffs reasonable attorney's fees and costs; and

F.  Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
### (Mandatory Injunction)

71.  Plaintiffs repeat and reallege Paragraphs 1-62 with the same force and effect as though fully set forth herein.

72.  Plaintiffs and Class members had, and continue to have, a clear right to the winnings plus interest because they met all of the requirements set forth in the Illinois Lottery Law, which entitled Plaintiffs and Class members to their winnings, and thereby established Plaintiffs' and Class members' full and exclusive property rights in the winnings  (*i.e.*, ownership).

73.  Pursuant to the Illinois Lottery Law, Defendants were, and still are, obligated to provide the winnings to Plaintiffs and Class members because they met all of the requirements of

the Illinois Lottery Law, and Defendants retained no discretionary authority to cancel, withhold, or otherwise deny Plaintiffs and Class Members their winnings.

74.     Plaintiffs and Class Members suffered, and continue to suffer, injuries caused by Defendants' refusal to comply with the Illinois Lottery Law because they have been, and continue to be, deprived of property—winnings and interest—which belongs to them.

75.     Plaintiffs' and Class members' injuries include the loss of their winnings, interest thereon, and the deprivation of their constitutional and property rights.

76.     The injury described above is irreparable in that Defendants have continuously refused, and still refuse, to disburse the winnings to the Plaintiffs and Class members.  There is no reasonable basis to believe that Defendants will ever fulfill their obligations under the Illinois Lottery Law, as the state continues to operate without a budget and no end to the budget impasse is in sight.

77.     Plaintiffs and Class members have no adequate remedy at law.

78.     Based on the foregoing facts, Plaintiffs and the Class seek an injunction requiring Defendants to immediately suspend the sale of Illinois Lottery tickets with potential winnings in excess of $25,000 until all winning tickets can be properly and promptly paid; immediately issue payments of all prizes in excess of $25,000 from the State Lottery Fund, plus pre-judgment interest to Plaintiffs and Class members; suspend payment of the Lottery's operating costs and expenses; and order Defendants to explicitly inform individuals presently purchasing the Illinois Lottery tickets and games at the point of sale that they are not able to collect their winnings if their winnings exceed $25,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of Class I and II pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying Class I and II, defined herein;

B.    Designating Plaintiffs as representatives of Class I, and Plaintiff Rasche as representative of Class II, and their undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiffs and the Class and against Defendants;

D.    Issuing a mandatory injunction requiring Defendants to immediately suspend the sale of Illinois Lottery tickets with potential winnings in excess of $25,000 until all winning tickets can be properly and promptly paid; immediately issue payments of all of their winnings, plus interest at the statutory pre-judgment interest rate, to Plaintiffs and Class members on the unpaid winnings of at least $288,425,000; suspend payment of the Lottery's operating costs and expenses; and order Defendants to explicitly inform individuals presently purchasing Illinois Lottery tickets and games at the point of sale that they are not able to collect their winnings if their winnings exceed $25,000;

E.    Awarding Plaintiffs reasonable attorney's fees and costs; and

F.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT III
### (42 U.S.C. § 1983)

79.    Plaintiffs repeat and reallege Paragraphs 1-62 with the same force and effect as though fully set forth herein.

80.    At all relevant times, each Defendant was a "person" as interpreted in 42 U.S.C. § 1983.

81.    At all relevant times, there was in effect 42 U.S.C. § 1983, which states, in relevant part:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

82.     The Fourteenth Amendment to the U.S. Constitution and Article I, Section 2 of the Illinois Constitution guarantee that no State shall "deprive any person of life, liberty or property, without due process of law."

83.     The Fifth Amendment's "Takings Clause" of the U.S. Constitution states that "nor shall private property be taken for public use, without just compensation." The Takings Clause is made applicable to the States by way of the Fourteenth Amendment to the U.S. Constitution.

84.     Article I, Section 15 of the Illinois Constitution provides that "private property shall not be taken or damaged for public use without just compensation as provided by law."

85.     At all relevant times, Defendants had a duty and obligation to comply with the Illinois and U.S. Constitutions when fulfilling their obligations arising under the Illinois Lottery Law.

86.     Defendants, acting under the color of State law, and with the power and authority vested in Article VII, Section 6 of the Illinois Constitution, denied Plaintiffs and the Class members of property that they owned and to which they were entitled, and upon which they have a vested right—their Lottery winnings.

87.     The actions of Defendants constitute violations of rights guaranteed to Plaintiffs and Class members pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I of the Illinois Constitution.

88.     Defendants committed these acts intentionally, knowing said acts would violate Plaintiffs' and Class members' constitutional rights.

89.     As a direct and proximate result of Defendants' actions, Plaintiffs and Class members suffered financial damages and violations of their constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of Class I, pray for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying Class I, defined herein;

B.      Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiffs and the Class and against Defendants;

D.      Issuing an order awarding Plaintiffs and Class members their damages as requested herein;

E.      Awarding Plaintiffs reasonable attorney's fees and costs; and

F.      Granting all such further and other relief as the Court deems just and appropriate.

## COUNT IV
### (Conversion)

90.     Plaintiffs repeat and reallege Paragraphs 1-62 with the same force and effect as though fully set forth herein.

91.     Pursuant to the Illinois Lottery Law, Defendants were, and still are, obligated to pay out the winnings to Plaintiffs and Class members because they met all of the requirements of the Illinois Lottery Law for immediate payment, and Defendants retained no discretionary authority to cancel, withhold, or otherwise deny the Plaintiffs and Class members their winnings.

24

92.     Plaintiffs and Class members had, and continue to have, full and exclusive property rights in the winnings (*i.e.*, ownership) because they met all of the requirements of the Illinois Lottery Law, which entitled Plaintiffs and Class members to the winnings based on their respective lottery purchases.

93.     Plaintiffs and Class members had, and continue to have, immediate rights to possession of the winnings because their full and exclusive property rights in the winnings (*i.e.*, ownership) has vested.

94.     Defendants unlawfully retained, controlled, and possessed Plaintiffs' and Class members' property when they failed to pay the winnings to Plaintiffs and Class members.

95.     Plaintiffs and Class members demanded, and continue to demand, that the Defendants issue the Lottery winnings to Plaintiffs and Class members, but Defendants have refused, and continue to refuse, to do so.

96.     Defendants unlawfully converted Plaintiffs' and Class members' property when they retained possession of the winnings, despite Plaintiffs' and Class members' demands that Defendants properly distribute the winnings to them.

97.     As a direct and proximate result of the foregoing, Plaintiffs and Class members sustained damages in the amount of their winnings, plus pre-judgment interest at the rate of 5% under 815 ILCS 205/2, on the total unpaid winnings of at least $288,425,000.

98.     Defendants are obligated to make payments requested hereunder from the State Lottery Fund.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of Class I, pray for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying Class I, defined herein;

B.      Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiffs and the Class and against Defendants;

D.      Issuing an order awarding Plaintiffs and Class members their damages as requested herein;

E.      Awarding Plaintiffs reasonable attorney's fees and costs; and

F.      Granting all such further and other relief as the Court deems just and appropriate.

## COUNT V
### (Unjust Enrichment)

99.     Plaintiffs repeat and reallege Paragraphs 1-62 with the same force and effect as though fully set forth herein.

100.    Pursuant to the Illinois Lottery Law, Defendants were obligated to provide the winnings to Plaintiffs and Class members because they met all of the requirements of the Illinois Lottery Law, and Defendants retained no discretionary authority to cancel, withhold, or otherwise deny Plaintiffs and Class members their respective winnings.

101.    Plaintiffs and Class members had, and continue to have, full and exclusive property rights in the winnings (*i.e.*, ownership) because they met all of the requirements of the Illinois Lottery Law, which entitled Plaintiffs and Class members to the winnings.

102.     Defendants unjustly retained a benefit—the winnings—to the detriment of Plaintiffs and the Class members, as the Defendants have deprived Plaintiffs and the Class members of their property, plus interest.

103.     Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

104.     Defendants accepted the benefit from the Plaintiffs and the Class Members, and it would be inequitable for the Defendants to retain the benefit of the money, as the Illinois Lottery Law obligated the Defendants to disburse the lottery winnings to Plaintiffs and the Class members. Additionally, Defendants are earning interest on the Plaintiffs' and Class members' winnings that Defendants are unjustly retaining, and it would be inequitable to allow Defendants to retain that interest.

105.     Defendants have retained money to which they are not entitled, and under these circumstances equity and good conscience require that Defendants deliver the money to Plaintiffs and the Class.

106.     As a direct and proximate result of the foregoing, Plaintiffs and Class members seek restitution in the amount of their winnings plus pre-judgment interest at the rate of 5% under 815 ILCS 205/2,  on the total unpaid winnings of at least $288,425,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of Class I, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying Class I, defined herein;

B.     Designating Plaintiffs as representatives of the Class and their undersigned as Class Counsel;

C.    Entering judgment in favor of Plaintiffs and the Class and against Defendants;

D.    Issuing an order awarding Plaintiffs and Class members their damages as requested herein;

E.    Awarding Plaintiffs reasonable attorney's fees and costs;

F.    Imposing a constructive trust over the Plaintiffs' and Class members' Lottery Winnings wrongfully retained by the Defendants, as well as all interest that Defendants earned on that money; and

G.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VI
### (Fraud)

107.    Plaintiffs repeat and reallege Paragraphs 1-62 with the same force and effect as though fully set forth herein.

108.    Pursuant to Illinois Lottery Law, Defendants were obligated to provide the winnings to Plaintiffs and Class members because they met all of the requirements of the Illinois Lottery Law, and Defendants retained no discretionary authority to cancel, withhold, or otherwise deny Plaintiffs and Class members their respective winnings.

109.    Plaintiffs and Class members had, and continue to have, full and exclusive property rights in the winnings (*i.e.*, ownership) because they met all of the requirements of the Illinois Lottery Law, which entitled Plaintiffs and Class members to the winnings.

110.    Defendants unjustly retained a benefit—the winnings—to the detriment of Plaintiffs and the Class members, as the Defendants have deprived Plaintiffs and the Class members of their property.

111.    Defendants failed to inform the public and the individuals who purchased the Illinois Lottery tickets and games after July 1, 2015, that the Lottery winnings in excess of $25,000 will not be paid.

28

112.    To date, Defendants continue to sell Lottery tickets and games to the public, without properly informing the buyers of the Lottery Tickets and games that the Lottery winnings in excess of $25,000 will not be paid.

113.    To date, Defendants continue to advertise and represent that the Illinois Lottery games and tickets with potential prize values in excess of $25,000 are "instant" games that provide an "instant payout".

114.    Defendants knew that they had no intention of making payments for the Lottery winnings in excess of $25,000, yet they continued to withhold that information from the public, intending the public to continue buying the Lottery tickets and games, which would provide a source of revenue to the Defendants.

115.    Defendants' foregoing representations and omissions gave Plaintiffs and the Class the overall net impression that Defendants would instantly pay all prize money to all winners of all Lottery tickets and games.

116.    Plaintiffs and the Class members relied on the accuracy of the Defendants' statements and conduct, in deciding whether to purchase the Lottery games and tickets.

117.    Plaintiffs and Class members sustained damages as a result of their reliance on the Defendants' statements and conduct, in that they purchased Lottery tickets and games and are not able to collect the winnings due and owing to them.

118.    As a direct and proximate result of the foregoing, Plaintiffs and Class Members seek restitution in the amount of their winnings plus interest.

119.    In addition, Defendant Northstar shall is liable for punitive damages for its role in the fraudulent scheme subject to the instant suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of Class I and Class II, pray for an

Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying Class I and Class II, defined herein;

B.    Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiffs and the Class and against Defendants;

D.    Issuing an order awarding Plaintiffs and Class members their damages as herein;

E.    Awarding Plaintiffs reasonable attorney's fees and costs;

F.    Assessing punitive damages against Defendant Northstar; and

G.    Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Plaintiffs RHONDA RASCHE and DANIEL CHASTEEN, individually, and on behalf of all others similarly situated,

By:   s/Thomas A. Zimmerman, Jr.         
      Thomas A. Zimmerman, Jr. (IL #6231944)
      *tom@attorneyzim.com*
      Eleonora P. Khazanova (IL #6293116)
      *ella@attorneyzim.com*
      Matthew C. De Re (IL #6317913)
      *matt@attorneyzim.com*
      Nicholas J. Hagman (IL #6317689)
      *nick@attorneyzim.com*

ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

Counsel for the Plaintiffs and Class

# EXHIBIT 1



## OFFICE OF THE GOVERNOR

JRTC, 100 W. RANDOLPH, SUITE 16-100
CHICAGO, ILLINOIS 60601

**BRUCE RAUNER**
GOVERNOR

February 24, 2015

Timothy J. Simonson
Chief Executive Officer
Northstar Lottery Group
180 North LaSalle Street, Suite 1810
Chicago, IL 60601

Re:     The Termination Agreement entered into between the State of Illinois acting through the Illinois Department of the Lottery, GTECH Corporation, Scientific Games International, Inc. and Northstar Lottery Group, LLC executed on December 9, 2014 (the "Termination Agreement").

Dear Mr. Simonson:

As you are aware, Illinois Attorney General Lisa Madigan recently issued a formal decision disapproving the Termination Agreement you signed with Governor Quinn, rendering that document invalid and unenforceable.

The Office of the Governor has therefore directed the Illinois Department of the Lottery (the "Lottery") to enforce the terms of the "Illinois Lottery Private Management Agreement between The State of Illinois Department of Revenue and Northstar Lottery Group, LLC" entered into on January 18, 2011 (the "PMA").

The PMA requires you to meet specific Net Income Targets. You have consistently failed to satisfy those obligations. While there are unresolved disputes over adjustments to these figures, even if all of those disagreements were resolved in Northstar's favor, your Net Income Shortfalls would still be more than 10% below the Net Income Targets for at least two consecutive years. That is unacceptable and grounds for termination under Section 13.3 of the PMA.

**Office of the Governor**
February 24, 2015
Page 2 of 2

We are prepared to enforce the terms of the PMA, including contesting Northstar's downward adjustments and its calculation of Net Income. We will also pursue the collection of any applicable Net Income Shortfall Payments for FY 2015. If we are forced to terminate under Section 13.3, we will not agree to any annual Disentanglement Fees that exceed those previously negotiated or pay any of the Termination Fees agreed to by the previous administration in the Termination Agreement.

Because the PMA is in place, we are hereby giving you notice that you are in violation of your obligation under Article 18 of the PMA to furnish to us performance bonds or letters of credit in the aggregate amount of $100,000,000. You will need to immediately provide replacement bonds, letters of credit or alternate security instruments. In light of the circumstances of this and other failures to perform according to the PMA, we have asked the Illinois Gaming Board to conduct a suitability investigation into the manufacturer, supplier and distributor licenses that are currently maintained or have been applied for by any company affiliated with GTECH Corporation, Scientific Games International, Inc. and International Game Technology.

We recognize that all parties have an interest in terminating the PMA so as an alternative we will give you fourteen (14) days to propose a new settlement agreement. That agreement must satisfy the conditions established by the Attorney General and provide for a detailed plan to continue lottery operations until a new private manager can be selected, but under no circumstance will we agree to a new long-term supply contract with Northstar or its affiliates, or require the Lottery or a new private manager to use equipment supplied by Northstar or its affiliates.

Please let us know when you are available to meet to discuss next steps. I look forward to hearing from you at your earliest convenience.

Sincerely,

Jason Barclay
General Counsel